The Honorable Judge of the United States Court of Appeals before the 7th Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw a hearing of their attention. This report is now in writing. God save the United States and this Honorable Court. Good morning, everyone. Our first case up this morning is 23-1262, United States v. Ji Chaoqun. Good morning. Good morning, Your Honors. May it please the Court. My name is Damon Sharonis, and I represent Xiaoxin Ji along with Aubrey Jake and Chris Parenti. Mr. Ji raised several issues on appeal, and I plan on starting with the unanimity issue, but I just want to give a brief sort of rundown of some of the operative facts. Ji was a Chinese citizen who came to the United States in August of 2013 on an F-1 visa. While here, he studied at the Illinois Institute of Technology, Computer Engineering. He also joined the Army through the MAVNI program, and the evidence at trial was undisputed that he had contact with officers of the MSS, which is the Ministry of State Security, that is comparable to the CIA in the United States. It is also undisputed that they recruited him. The government introduced text messages and e-mails showing contact. They introduced a photograph of a contract that was found on Mr. Ji's phone, and they alleged that he conspired to and did, in fact, act as an unregistered foreign agent of the People's Republic of China. In that vein, they essentially put forward four acts that would qualify for the substantive count to the 951 count, and those are broken down between contacting a high school friend about introducing him to students in the aviation program, purchasing and sending publicly available commercial background reports to Zhu Yanjun, who was an MSS officer, that's undisputed, and was characterized as Ji's handler throughout the course of the trial, submitting his name to a talent pool for the FBI internship program and joining the United States Army under the MAVNI program. He was convicted of the 371 conspiracy, the substantive 951 count, 1001 violation for lying on his Army application. He was acquitted of two wire fraud counts. He was sentenced to 96 months in prison. The first issue that I want to talk about deals with the district court's refusal to instruct the jury that they need be unanimous as to the act that Ji committed subject to the direction or control of a foreign agent. The underlying assignment of error implicates a question of law, and the failure to instruct the jury on unanimity led to uncertainty to the jury's verdict as it related to count two and it denied Ji his right to have a unanimous verdict. Mr. Sharonis, as you know, whether or not to instruct a jury on unanimity is an issue of statutory construction. So what in 951 supports your argument that the district court should have instructed the jury that they had to be unanimous on the act? Understood. One, I think we can agree that an element is one whose specification is necessary to establish the very legality of the behavior. And when you look at the statutory language, by its terms, 951 imposes liability for action. It's not a status crime. It's not enough to be here in the country as an operative of a foreign agent. You need to actually act. And if you look at even the Latchin case, if you look at Duran, which we cited, they clearly say you need to act. Why isn't the focus on the relationship as opposed to the act and the relationship with the foreign government? Because 951 defines an agent of the foreign government. It lists exceptions to that. And the focus here, both in the text itself and in the legislative history, seems to be on the relationship of the individual with the foreign government. I don't know if I necessarily agree with that. I think that a relationship with a foreign government is certainly a predicate to being convicted under 951, but that alone is not sufficient. That's not sufficient, but it is having that relationship and not registering or reporting it to the United States. That's what the concern seems to be. But, well, I think that this court has held, and I'll just cite the Latchin case, and that's a case that I think deserves some discussion today, that you have to have more than that relationship. And I know Your Honor agrees with that. You have to act. I know you agree with that premise, but if you have to act. You have to act, but what Latchin says is you have to take acts of some kind on behalf of the country. Nowhere is there a definition of act. But if you look at the Latchin case, and I think respectfully that the Latchin case has been taken further than it should have been. I was quoted from it. No, I agree. But if we look at the Latchin case, in that case, first of all, the indictment listed in the 951 count what the acts were that Latchin took subject to the direction and control of a foreign government. It listed five or six acts that he took. Yes, the overt acts for the conspiracy. No, actually in the 951 count, I believe. Okay, yes. So in the substantive count, the acts were actually listed. And the jury in the Latchin case was instructed that they needed to be unanimous on those acts. So they received a unanimity instruction in that case. And what happened in Latchin is the appellant basically brought a sufficiency challenge to those charges. And what the appellate court said is, well, we don't need to establish or the government doesn't need to establish that he was spying on Iraqi Christians, right? But they have to find that he did something. He did some act. But in that case, the jury was properly instructed. They were told what these acts were. And this court basically said there was enough circumstantial evidence to establish that he did some act. So I think what's happened since Latchin is the government has taken that some acts, even though I don't think that's what Latchin really stands for, and has used that to essentially say the unanimity requirement doesn't exist. When Latchin and Dumas say both of those cases in the indictment, they have the substantive acts that were committed and they were instructed on unanimity. Mr. Schor, there surprisingly is not a lot of law on this statute. I couldn't find any circuit case that requires unanimity on an act. I don't think it's been addressed. I actually looked again last night, Judge. No, there's not a lot of these cases. And I know we don't have patterned jury instructions on this particular statute. I couldn't find any helpful patterned jury instructions in any other circuits. I don't know if you were able to. Well, the cases that I cited, the Cheemak case, and I know I'm going to pronounce this wrong, but Abumo, I believe is how it's pronounced. In both of those cases, there were instructions. But not necessarily patterned. Not patterned instructions. No, there weren't. This offense doesn't have a guideline range. I mean, it's an oddity to some extent. But we have found a number of district court cases where you're instructed that you have to be unanimous. And I think that that was certainly the better course here. And the government doesn't lose a lot through that. This is not like in the Richardson case, they talk about the difficulty of proving drug cases. This district and the circuit court, the northern district, and the trial court level has a history of giving the unanimity instruction. And the government's argument that this is a means as opposed to an element, and again, we look at sort of the Richardson standard there, and I think that's an important case, although that deals with a specific statute. In that case, you're talking about a very broad statute. Here, I don't know if there's a broader statute than 951. But it doesn't mean any act that somebody takes in this country. Mr. Sharonis, does it matter that the statute uses the verb form of acts? That is, it's not that whoever does actions in the United States, but it's whoever acts. And perhaps it's just like linguistics, but it seems to me that the verb form of acts seems a bit broader than if a statute says, for example, whoever does specific acts in the United States, or even acts in the United States. Well, I've wrestled with that myself, and I think one of the problems, even in this case, when you look at the jury instructions, because the district court judge, we had our jury instruction conference the next day, the district court judge said that he believed that this was the verb form. And when you look at the actual instructions in this case, it's used in both the verb and the noun form. In other words, the instruction said, the defendant committed some act. That's in the instructions. That's a noun. If you look at the statute, it says acting. And then if you look at a lot of the cases, like the Duran case, which deals with, I guess I'll just call it Venezuelan intrigue, they specifically say you need to commit an act. So I wrestled with that as well, Judge. I think there's been different interpretations. My position would be that it's, I don't know if it's used in the verb form or the noun form. I think, you know, acting can be, if you're doing, if it's a verb, what is the acting? It's an act. So I struggle with that as well, Your Honor, and I think there are different sort of interpretations of it, but then we go back to sort of the Latchin case, and they talk about committing an act. So that's where I come out on that, but it's not something that I haven't been concerned with myself. I guess, for me, the gloss I take on it, other than the broadness of the verb form of acts, is that, as Judge St. Eve noted, it seems to put the emphasis, then, on the as agent of a foreign government, right? So you say it's not a status crime, and that's true. Something has to be done. But the fact that the verb form of acts is used here seems to kind of invite us to say, well, okay, you know, does something. And then what's really important is that the person is in the United States as an agent of a foreign government. So there's kind of the broadness aspect of acts, but there's also the fact that the verb form kind of propels us to look at, okay, well, what is the statute really addressing? Sure, and I've read a lot of legislative history and law review articles on this issue, and I don't think it's really 100% clear, but what I will say is that you can be an unregistered foreign agent in the United States. In other words, in this case, if they had G's alleged contract that was unsigned, and he was here, and he didn't do anything, he didn't do an act, then he's not guilty of acting as an unregistered foreign agent. He doesn't even have to register with anyone because he's not acting in that capacity, and the government actually sort of agrees with that. But I think the jury has to at least come to a unanimous conclusion that he did some action, right? And your argument is there needs to be more than that. Well, that's the problem, right? And the problem is the government responds by saying, well, let's look at gun cases. You could not have a starker difference between the types of cases we're talking about. They studied Pollack and Beretschia. In this case, the difference is, and again, it's not any act. And I think that's throughout the country. It's not any act in the United States that you could be convicted of under 951, unlike any firearm. Here, there is that added element, subject to the direction and control. And even the government in this case, although they kind of flip-flopped in rebuttal, basically said at the jury instruction conference, for example, G's joining the Army is an overt act in the conspiracy but not an act subject to the direction or control of a foreign government. Why isn't it any act as long as that act is subject to the control of the foreign government? Or at the direction of? But the problem becomes, and the reason you need unanimity is because the jury may be confronted with acts that are not at the direction or control of the foreign government. But if they're instructed on that, and they reach a verdict, why isn't that sufficient? Because I still think we get to a situation where jurors can disagree about the very conduct that makes the act itself, that makes it criminal. For instance, the government talks about robbery examples. But what makes this criminal is not the act. It's carrying out that act as an agent of a foreign government and not registering with the United States. So if you look at the legislative history, when this was the Espionage Act, which was the foundation for this, it's clear that Congress was not targeting illegal acts. It was during the war, and they were concerned about German efforts, and they even include that recruiting skilled labor force for Germany would be sufficient. There's nothing illegal about recruiting a skilled labor force. It is the fact that you're doing it as an agent, and you're not registered. The United States doesn't know that you were here as an agent. I think that deals with the scope of the statute, and I agree. I think that deals with the act, though, the nature of the act, and rebuts any argument you have that the act itself has to be illegal. It doesn't have to be illegal. I'm not saying that. I thought you said that in your briefing. No, I don't believe I did. It absolutely does not have to be an illegal act. Latchin says that, all cases that I've read have said that. But my argument is simply this. If it's a disagreement with Your Honor, it's certainly respectfully that they have to prove the act itself. That is my position, that without the act itself, you're going to be in a situation where six jurors could think that he's innocent of this, six could think he's guilty, another six could think he's innocent of one act, and six guilty of another, and they haven't established what I believe is an essential element of the crime. Mr. Shouros, what's the limiting principle? What's the limiting principle to your argument regarding unanimity? I'm not sure I follow, Keith. How would we write an opinion to say that unanimity is required here, and how would that opinion be applied to other statutes? You say the firearms statutes are distinguishable without distinguishing them, just saying they're distinguishable. But what do we write that is not going to be applied to drug cases and firearm cases and mail fraud cases and other cases where unanimity is not required as to every particular element? How do we write it? Absolutely. First, I do think the firearms cases are distinguishable, and the reason I think they're distinguishable is because they don't cover as broad of a range of conduct. Well, this isn't that broad a conduct when you consider what Judge St. Eve is saying, which is you have to first prove that the individual was an agent of a foreign government, which is a big limiting principle here in this particular statute. Okay. I think that, like in other cases where courts have found that things are elements and not means, for instance, the Richardson case would say statutory construction. We look at the risk to defendants, right? In a situation like this, there is a real risk that a person in this country who may be a foreign agent committed an act, but it was not at the direction or control of that foreign government, and I think that's sort of the way that I would phrase that, that an act is an essential element, just like other cases have found acts to be essential elements and not means. I guess that's the best I could do regarding that, Judge. I don't have a lot of time left. Go ahead to the next. I will give you a little extra time if you need it. There are a lot of issues here. One of the issues, and I'm not foregoing the affirmative defense versus element issue, but I think the legal commercial transaction, barring us from presenting that affirmative defense, was error. And the reason I believe it was error is because it absolutely misconstrued and basically created what the government and the district court referred to as the necessity of a strict commercial agency relationship in order to avail yourself of that exception. And before I get into the facts of this case, I just think that that's nowhere in the plain language of the statute, and it completely disregards 951E, which is extremely important. The government did not raise this at the lower court. They did not answer us at the lower court. I don't believe they answered us in the briefs, but 951E limits who can avail themselves of that exception. So Congress certainly knew how to sort of include entire groups of people who cannot avail themselves of that exception. They did not include spies. So it's our position that this was respectfully sort of created from whole cloth, this legal commercial transaction, as something that needed an agency relationship that was strictly commercial. And the one thing I just want to add, the only time I've ever seen this in a case is the Rafikian case. And the Rafikian case, we've cited several times, but it's sort of an interesting test case because in that case, Judge Tranga did say that legal commercial transaction was an element that needed to be disproven. So what we then saw was how this would play out. And in that case, the jury was instructed, and there were no instructions about strict commercial agency relationships. What happened is the government had to allege that the acts, the specific acts, which goes back to my first point, were in violation of FARA and the Lobbying Disclosure Act. So I think that the court's ruling that she was barred from doing this was based on a faulty premise that he had to show some strict relationship that was commercial in nature only. We've got two minutes left. I'd like to save it for rebuttal. Okay. Thank you. Thank you, Mr. Sharonis. Mr. Peabody. Good morning, and may it please the court. This court should affirm defendant's conviction and sentence. I want to follow Mr. Sharonis' lead and start with unanimity. Section 951 requires the government to prove that a person acted as a foreign agent in the United States without proper notification. To prove defendant acted as an agent is an element. The ways in which he specifically did so is not. Defendant's argument to the contrary rests on Richardson. But this court has repeatedly limited attempts to stretch Richardson beyond Section 848, the continuing enterprise statute. It did so in Griggs, it did so in Turner, it did so in Gibson, and it should do so again. Even taking Richardson more broadly, it proves the district court's point. As a matter of text, in Richardson's reasoning that violations under Section 848 suggested a matter of unanimity, the court at page 818 of its opinion expressly contrasted the word violations and violate to words like acts, and that is because that word, as has been recognized in the conspiracy context, is broad and suggests means, not an element. And that text jibes with the history. As is evident from the text, Congress wasn't concerned with criminalizing specific acts of foreign agents while here. It wasn't concerned with just aviation espionage or attempts to gain access to sensitive material or attempts to recruit U.S. personnel. They were concerned with foreign agents working here at all without proper notification to the Attorney General. Treating the specific acts as a means, not an element, suits that purpose. Defendant's arguments with respect about prejudice are misplaced. He couldn't have been convicted for anything he did in the United States. He wasn't convicting for expressing sympathies. Defendant could have only been convicted of a handful of acts, four here. There were four acts in question at trial, background reports, applying to the FBI, recruiting aviation students, and joining the Army. I assume in discovery all of this was made clear to the defendant, that they're not alleged specifically in count two, but there's no notice issue here, correct? I think that's right, Judge. I think on reply the defendant moves away from a constructive amendment argument and more into a variance posture. We think that's waived. We also think it fails because there is no prejudice. My question was a little bit different than the constructive amendment issue, though just from a pure due process notice standpoint. The four acts at issue, although an instruction was not given on unanimity, I assume these four acts were not a surprise to the defendant, that during discovery the government made clear which acts they were focused on. That's absolutely right, Judge. The indictment itself in paragraph one alleges the MAVNI program and makes reference as well to the purchase of these background reports. Then at docket entry 342, the defense moved to exclude the government from presenting as evidence the other two acts, applying to the FBI in the text messages with Hu Yanzhi about recruiting aviation students. That was filed, I think, three weeks before trial. Given the two were in the indictment and they moved to bar the other two, I don't think there's any question about notice. I do want to note, I understood Mr. Chiron, is to say that the government's argument with respect to unanimity somehow derives from Latchin. I don't believe we even cited Latchin in our argument on the unanimity issue specifically. Our argument derives from the text of the statute as well as from how this court has treated Richardson ever since it was decided in the 80s. To Judge Lee's point, acts is broad and it should be understood as a required element, but the specific means are not. Judge Lee, you asked Mr. Chironis if whether it is a verb somehow makes a distinction. I really, given that Richardson expressly contrasted violates with acts, I don't know that you need to get that far. I'd also point to Section 371, which, of course, uses act as a noun, not a verb. It's saying committed an overt act. This court has been clear for a long time, including in Griggs, that even an overt act is not a matter of unanimity for the jury. I want to turn now to the second argument Mr. Chironis raised this morning, the affirmative defense in count two. Flatly, defendant's arguments here are premised on a misreading of Section 951D. Defendant's purchase of background reports, ones that he encrypted, mislabeled as midterm questions, and sent from dummy email accounts to his handler at the handler's explicit request, do not fit the exception. And that is true even if the purchase of background reports is not inherently illegal. That is because the exception does not prevent liability for otherwise legal commercial acts. If it did, it would be the exception that swallows the rule. Section 951 protects those whose relationships with foreign principles are part of a legitimate commercial transaction. What would be an example of that, Mr. Peabody? Sure. Lawyers. I think for one, that's clear in the 1982 hearings. I understood the defense on reply to make an argument that while lawyers announce themselves in court, so they're subject to a different exception. I don't think that's true. I can think of a whole host of lawyers, real estate lawyers, commercial lawyers, who do not do so. There are other ones, consultants for state-owned companies, investment managers, bankers, developers. I don't see why any of those may not be subject to the D4 exception. It simply doesn't cover foreign agents who do their principles bidding through otherwise above-board transactions. But isn't that concern taken care of in 951E? So how does 951E work in conjunction with 951D4? Judge, I understand 951E to be, I think the defense characterized it as a meta-exemption. I think it's an exemption to the exemptions. 951A precludes you from acting as a foreign agent without notification. 951D then sets out for people who are exempt from that type of transaction. And 951D says, well, not if you're an agent of Cuba or you've been convicted of certain crimes before. I simply think 951's exemption to the exemption does not advance the ball for defendants' wish to argue that the district court rightly rejected that his purchase of these background reports at the behest of his handler were a legal transaction that somehow unionized him from liability. With that point of law established, I think all defendants' arguments about why he should have been permitted to present the defense to the jury wash away. Under the statute, he had no right to advance the defense. It wasn't supported by the facts or the law. Not once did he argue that his relationship to the MSS was a legal or commercial one, nor, of course, could he. Nor is the exception an element of the offense. It is a defense. The Fourth Circuit was correct. Defendant offers no response to the rule of Mikulski, and it would lead to absurd results. The defendant were right about D4. I see no reason why he wouldn't be right about D1 through 3. The effect would be that the government would have to disprove each one of those sub-elements, effectively doubling the elements the government needs to prove under Section 951 at a trial. It seems, if the defendant is correct, that 1 through 3, given the structure of the statute, would also have to be elements. There would be no argument around that, that 1 through 3 can't be affirmative defenses and 4 be an element, given the way it's structured. So it's either all one or all the other. That is certainly the consequence of defendant's argument, Your Honor. This court, of course, has addressed what is, in some ways, a very different statute, Section 511, which prohibits you from altering a vehicle's VIN. But that statute bears some similarities to ours. It says, don't do a thing. And then it says, well, you can do this thing if you're this certain group of people. That's sort of exactly how I read 951. Mr. Peabody, are you aware if any other circuit has patterned jury instructions on this? Again, I couldn't find any, and sometimes those could be instructive on the circuit's position. Your Honor, I'm not aware of any other circuit's patterned jury instructions. I also want to respond just briefly to Mr. Sharonis' argument that 951 is a status crime in his attempts to distinguish Pollock. I think Pollock covered 922G firearms. I appreciate that there's some superficial dissimilarity between 922G and 951, of course, but both are status crimes that prohibit you upon a certain status from doing a thing. 922G asks, what is your status? Are you a felon? If so, you can't do a thing. 951 asks, are you a foreign agent? If so, don't act here without proper notification to the Attorney General. So I don't think there's much to the argument he's made that it's not a status crime, that there really needs to be an action. I think many statutes have both a status element and an act-as-ray element. Unless the Court has any other questions regarding the issues that have been raised, the government would ask that you affirm the conviction in the sentence. Thank you, Mr. Peabody. Mr. Sharonis? We'll give you four minutes. Thank you, Your Honor. Just a few points. The government argued that no court has extended Richardson past the CCE statute. I think that's not correct. In the Manaba case from this district, Judge Posner did extend it to a different statute, although it was indicta because it was reversed on another ground. But in that case, he cited a number of cases that he agreed supported the unanimity sort of requirement. And he used some interesting language. And one of the things that I've been thinking about as I've been preparing for this is the difference between a means and an element is when nothing turns on something, it's a means. When something does turn on it, it's an element. I think that's a fair way to look at it. And just quickly, regarding the government's argument as to robbery in that example, I agree that nothing turns on whether the threat of force was a gun or a knife. But something does turn on who the taking is taken from. And I think that's the more apt example here, that in this situation, something does turn on what the act is. And I know Your Honor's questions about that, but that's our position based on statutory language and the risk to the defendants. One of the things I wanted to also point out, the government still didn't answer your question, Judge Lee. I don't know if you picked up on that, but they did not answer how 951E plays into this, whether it's a meta exception or not. What that says is the Congress has an absolute ability to restrict people from availing themselves of this exception. And if you look at the actual language, it helps because it says, if you are otherwise a foreign agent, that's one thing, and from one of these countries, you can't do it. So you can't avail yourself of the legal commercial transaction. So if China was listed there, which it never has been, then Xi could not avail himself of that. So all of these arguments by the government that this would lead to absurd results is only if you ignore that portion of the statute, which they have done consistently throughout the course of this litigation. Mr. Shorns, what about the... raises in its brief is a situation where an agent of the foreign government hires a commercial photographer to go out and take pictures of restricted areas that no one should be taking pictures of. In your estimation, would that fall within D4 or not? First, I would say that that's recently happened. And since 1917, the criminal code has caught up. There are specific crimes that you cannot photograph military bases, that you cannot conspire to do it. The government is acting as if 951 is the only arrow in their quiver. There are a number of other crimes that people can be charged with, unlike 1917, when this was enacted because all they had was sort of the internment laws and the treason statutes. But now there are other sort of things that can be done. The government forgets that they have a wide range of sort of how to charge people. And the real issue is this. Individuals... There is nowhere in this statute, when you just read it, that says anything about a strict commercial agency relationship. It's not there. It's nowhere there. So if you're just reading the statute... But I'm not sure you answered my question. My question is, under that scenario, would the government be able to charge the person that hired the photographer under 951? They may be able to charge them with conspiracy to violate 951. And that's certainly a possibility. Whether or not that would fall as a legal commercial transaction, it very well might. And the question is, would they then be comporting with the law? And the thing is, I didn't write the law, you didn't write the law, that's what it says. When you look at the plain language, anyone engaged in a legal commercial transaction, that's what it says, with no mention of agency or anything else. So I think that would potentially be problematic, but there is a bunch of other laws that those individuals would most likely be charged with. Thank you. Mr. Shronis, one last question, please. Is it your position that 951D1-3, that each of those is also an element? I don't want to say I've never thought of that, but I think if the argument that we have made regarding 4, I think it would be... And that wasn't made in Rafiki either. I think that would probably be a fair estimation. I don't want to commit to it because I'm not 100% sure, but I know Rafiki only dealt with the fourth prong, so sometimes I like saying I don't know, Judge, and I'm going to say that here. Okay, that's fair. Thank you. Thank you. Thanks to both counsel. The case will be taken under advisement.